IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONCERT HEALTH PLAN INSURANCE    )
COMPANY,                         )
                                 )
        Plaintiff,               )
                                 )
    v.                           )   No. 09 C 7550
                                 )
HOUSTON NORTHWEST PARTNERS, LTD. )
d/b/a HOUSTON NORTHWEST MEDICAL  )
CENTER,                          )
                                 )
        Defendant.

**MEMORANDUM OPINION AND ORDER**

This action was brought by Concert Health Plan Insurance Company ("Concert") against defendant Houston Northwest Partners, Ltd. d/b/a/ Houston Northwest Medical Center ("Houston"). Concert's complaint seeks declaratory and injunctive relief from Houston. Houston has moved to dismiss this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for a lack of subject matter jurisdiction under Rule 12(b)(1). In the alternative, Houston has moved to dismiss for improper venue under Rule 12(b)(3).

**I.  Background**

Concert is an Illinois insurance company which provides medical benefits to its members pursuant to the PHCS Network PPO ("the Plan" or "the ERISA Plan"). Private Healthcare Systems, Inc. ("PHCS") is an entity which contracts with insurance companies and health care providers to facilitate and provide provider networks

and comprehensive medical management systems.  Houston, a Texas hospital, entered into one such contract, the "PHCS Preferred Facility Agreement," with PHCS ("the Houston contract") to provide managed care.  Concert entered into a "Subscriber Services Agreement" with PHCS ("the Concert contract") to provide provider networks and a comprehensive medical management system to Concert.  Concert entered into the Concert contract in order to receive the benefits of a PPO network, including lower rates for services by participating providers.

On or about May 30, 2007, patient A. Zangri was admitted to Houston for necessary medical treatment.  Concert provided health insurance to Zangri.  On June 25, 2007, after it had discharged Zangri from the hospital, Houston submitted a claim to Concert for payment of Zangri's medical bills.  After Houston submitted its claim, Concert paid Houston $26,214.26, which was over $10,000 less than what was due under the Houston contract.  On or about August 20, 2007, Houston appealed Concert's underpayment and advised Concert and PHCS that the contractual allowance was $37,831.53.  After taking into account Zangri's responsibility of $753.24, Concert still owed Houston $10,864.03.  Due to Concert's refusal to make any additional payments and the length of time involved in the dispute, the contractual discount for this claim, provided for under the Houston contract, is no longer available and Houston asserts that Concert is now liable for the full amount of the

charges (which total $69,960.91 plus interest, costs, and attorney's fees). As a result of Concert's failure to pay the amount due, Houston instituted arbitration proceedings against Concert in Texas. This lawsuit followed.

**II. Analysis**

    **A. Subject Matter Jurisdiction**

        **1. Federal Question Jurisdiction**

I first must determine whether I have subject matter jurisdiction over this action. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999) (where resolution of subject matter jurisdiction is not "arduous," "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of [subject matter jurisdiction] first"). Houston argues that neither federal question nor diversity jurisdiction is present here and thus subject matter jurisdiction is lacking.

For federal question jurisdiction to exist, a case must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for it is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995) (internal quotations omitted). In the context of a declaratory judgment, the well-pleaded complaint

rule requires that jurisdiction be determined by whether the federal question would exist over the presumed suit by the declaratory judgment defendant. *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995). Houston argues that, despite Concert's citation to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002, *et seq.* ("ERISA"), this dispute over payment is essentially a breach of contract case, governed by Texas law. In a one-sentence response, with no citation to case law, Concert cryptically states that, "While Houston is correct that this matter does not involve a claim for benefits under ERISA, the issue does involve a question arising under an Illinois health insurance plan governed by ERISA." Resp. at 8.

In the end, I must determine whether a federal question would exist within the "presumed suit" by Houston against Concert. As this dispute involves a benefits plan, I am mindful of the broad reach of preemption under ERISA. ERISA is a comprehensive civil-enforcement scheme for employee welfare benefit plans that completely preempts any state-law cause of action that "duplicates, supplements, or supplants" an ERISA remedy. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Complete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into "'one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.*

4

(quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Franciscan Skemp Healthcare, Inc. v. Centr. States Joint Bd. Health and Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008) (quoting *Davila*, 542 U.S. at 209).

Section 502(a), ERISA's civil enforcement mechanism, establishes that a civil action may be brought by a participant or beneficiary: "[T]o recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Therefore, if a party's state law claims fall under this § 502(a)(1)(B) definition, they are preempted by ERISA.

The main question, then, before me is whether Houston's claim for payment from Concert would fall within the scope of § 502(a). Houston points me to a recent Fifth Circuit case, *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528 (5th Cir. 2009), in which a health care provider, who brought state law claims against an insurance company, alleged that the insurance company failed to pay the proper amount for services rendered by the health care provider. In determining if the claim at issue was governed by

5

ERISA, the Fifth Circuit stated, "The crucial question is whether [a provider] is in fact seeking benefits under the terms of the plan, or rights that derive from the independent basis of the contract." 579 F.3d at 529 n.3. The court held that "a claim that implicates the *rate* of payment as set out in the [contract between the health care provider and the plan administrator], rather than the *right* to payment under the terms of the benefit plan . . . is not preempted [by ERISA]." *Id*. at 530 (citing *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999)). The Fifth Circuit concluded that the health care provider's claims against insurer Aetna, which centered on the rate of payment, arose out of an independent legal duty contained in their contract (and not from the benefit plan itself) and were not covered by ERISA. The Fifth Circuit summed up by stating, "Again, where claims do not involve coverage determinations, but have already been deemed 'payable,' and the only remaining issue is whether they were paid at the proper contractual rate, ERISA preemption does not apply." *Id*. at 532.

Without controlling Seventh Circuit case law on this issue, I find the Fifth Circuit's reasoning to be persuasive and applicable here. As was the case in *Lone Star*, the dispute between the parties is not whether the claim must be covered – indeed, Concert has already agreed that it is covered and has made a payment to Houston – but rather over the rate of payment. Here, the rate of

6

payment is determined by the contracts between Houston, PHCS, and Concert, not by the terms of the ERISA Plan. Similarly, Concert's request for an injunction prohibiting the arbitration proceedings instituted by Houston also is governed by the Houston contract, and not by the ERISA Plan. Thus, Houston's claims would not be preempted by ERISA. As a result, I find no federal question presented here.

### 2. Diversity Jurisdiction

Federal diversity jurisdiction requires complete diversity among the parties, as well as an amount in controversy over $75,000. *See* 28 U.S.C. § 1332(a). Houston states that it is a limited partnership, organized under the laws of Texas, with its principal place of business in Texas. However, I am unable to determine Houston's citizenship without knowing the citizenship(s) of each of its general and limited partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that a limited partnership has the citizenships of each of its general and limited partners). Neither party provided the identity and citizenship of Houston's partners. Although Houston provided a number of assorted documents, including multiple copies of a "Certificate of Limited Partnership of Houston Northwest Partners, Ltd." from various years, it is not at all clear who the current partners of Houston are, or of what state(s) they are citizens.

In order to determine whether complete diversity exists here, I order Houston to file, on or before Monday, March 8, 2010, a description of the citizenship of its partners. If any of Houston's partners are corporations or other limited partnerships, Houston must provide additional information about the citizenship of those corporations or partnerships.

                              **ENTER ORDER:**

                              _____
                              **Elaine E. Bucklo**
                              United States District Judge

Dated: March 3, 2010